**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Timmy Dunlap,

Plaintiff,

vs.

Jo Anne Barnhart, Commissioner of the Social Security

Defendant.

No. CV 05-2998-PCT-MHM

**ORDER**

Plaintiff Timmy Dunlap ("Plaintiff" or "Mr. Dunlap ") seeks judicial review of the Administrative Law Judge's ("ALJ") decision denying his claim for disability insurance benefits. 42 U.S.C. § 405(g).

**I. <u>Procedural History</u>**

On August 15, 2003 Plaintiff filed an application for Supplemental Security Income benefits asserting an onset date of May 31, 2002. (Transcript ("Tr.") 53-57). The Plaintiff later amended his onset date to October 8, 2003, at which time he was 50 years old. (Tr.89). Plaintiff's application was denied initially and upon reconsideration. (Tr.27-38). Plaintiff requested a hearing and on August 26, 2004, the ALJ conducted a hearing. (Tr.182-207). Attending the hearing were Plaintiff, his counsel and a vocational expert. (Id.). On July 19, 2005, the ALJ rendered his decision finding Plaintiff not "disabled." (Tr.11-21). Plaintiff's request for review of the ALJ's decision by the Appeals Council was denied. (Tr.5-7). Plaintiff filed his Complaint in this Court on September 27, 2005. (Dkt.#1).

## II. **<u>Background Facts</u>**

### A. Plaintiff's Medical History

At the time of the hearing in front of the ALJ, Plaintiff was a 51-year old man weighing 189 lbs. and 6 foot, 1 inches tall. (Tr. 187). Plaintiff worked for twelve years in the auto body industry (Tr. 189) but stopped working in 1998. (Tr.190). Plaintiff reportedly stopped working because of back problems suffered during work and problems with his heart set off by paint fumes. (Tr. 191).

On December 1, 2003, Plaintiff was examined by Tomas B. Rios, M.D. (Dr. Rios), a consultative examining physician for the state agency. (Tr. 105). Plaintiff's chief complaints at the time were underlying heart problems and chronic back and leg pain. (Id.). Dr. Rios found that Plaintiff's heart complaint was "descriptive of isolated bouts of premature ventricular contractions" and were benign in presentation. (Tr.107). Dr. Rios also found that the back pain reported by Plaintiff was "mechanical in nature" as there was no nerve root irritation and no accompanying spasm on the back. (Tr. 107A). Dr. Rios diagnosed a history of cardiac arrhythmia, mechanical back pain and hypertriglyceridemia[1] and stated that Plaintiff "should be precluded from activities that require repetitive bending or stooping." (Tr.107,107A).

On February 13, 2004, at the request of the state agency, Valentine G. Birds, M.D ("Dr. Birds"), based upon his treatment of Plaintiff, stated that he treated Plaintiff at his office since January 5, 2004 for the following reasons: (1) Hyperlipidemia, (2) Lumbar and Paraspinal Myofasitis, (3) Smoker, (4) Dysinsulinism with Hypoglycemic episodes, (5) Borderline Myocardial Ischemia, (6) Recurrent artrial flutter, (7) Depression, (8) Hypertension, (9) Anxiety, and (10) Chronic emotional dysfunction. (Tr.109). Dr. Birds noted Plaintiff to be a patient "with a poor prognosis for improvement and is guarded for significant recovery without intensive psychotherapy and social support." (Id.).

---

[1]Hypertriglyceridemia involves an elevated triglyceride concentration in the blood.

On December 20, 2004, Plaintiff's physician, Michael Bauder, M.D. ("Dr. Bauder") performed a medical assessment regarding Plaintiff's ability to do work related activities. (Tr.147-149). Dr. Bauder concluded that Plaintiff could sit for four hours, stand for two hours, walk for three hours and spend a total of three hours on his feet during an eight hour work day. (Tr.147). Dr. Bauder further concluded that Plaintiff could occasionally to never lift eleven to twenty pounds and could occasionally lift up to six to ten pounds as well as that Plaintiff could not use both his feet for pushing or leg controls and could not squat, crawl or climb. (Tr.147-48). Dr. Bauder also concluded that Plaintiff's activities were limited by "severe" pain.[2] (Tr.149).

On March 24, 2005, Plaintiff was examined by Bradley Nicol, M.D. ("Dr. Nicol") for lower back and leg pains. (Tr.151). Dr. Nicol noted that Plaintiff's MRI revealed only "mild degenerative changes of the lumbar spine with no acute disc herniation and no fracture or kyphosis." (Tr.152). Dr. Nicol concluded that Plaintiff did not need surgical intervention and would not benefit from steroid injections. (Id.). Dr. Nicol noted that Plaintiff had tried physical therapy in the past and that Plaintiff did not want to pursue that route as well as recommended that Plaintiff "wean himself off the narcotic medications." (Id.).

On May 3, 2005, Plaintiff was referred to Steve Heeland, M.D. ("Dr. Heeland") for evaluation of his lower back pain. Dr. Heeland recorded that Plaintiff rates his pain level "as anywhere from a 3 to a 8 and overall a 4 on a VAS scale of 0 to 10." (Tr.159). Dr. Heeland noted that no radiculopathy was indicated. Dr. Heeland recommended steroid injections and "core stabilization therapy" to treat Plaintiff's mild to moderate lumber degenerative disc disease. (Tr.161).

**B. Hearing Testimony**

At the hearing before the ALJ on June 1, 2005, Plaintiff as well as the vocational expert Mark Kelman ("Mr. Kelman") offered testimony. (Tr.183-207). Plaintiff testified regarding his back and heart conditions. For instance, Plaintiff testified that when standing

---

[2]"Severe" is defined as [e]xtreme impairment of ability to function. (Tr.149).

on concrete, he could only stand for two hours at a time without severe back pain and could hardly sit after that point. (Tr.195). Plaintiff further testified that he could sit for three hours at a time and probably could lift five to eight pounds, but nothing heavier. (Tr.195-96). Plaintiff related his daily activities which included helping his wife around the house and some yard work. (Tr. 197). Plaintiff described his back pain level at a four or a five, but that it "really hurt" him if he over did himself and sometimes experienced shooting pain. (Id.).

During the hearing, several hypotheticals were posed to Mr. Kelman, the vocational expert, regarding Plaintiff's work ability. For instance, the ALJ posed the following question to Mr. Kelman:

> Well, let's assume that we have a person who is 51-years old, who has a limited 9th-grade education, who is able to do light exertional level work, which means the person could lift up to 20 pounds occasionally, and lift 10 pounds on a more frequent basis; and the job would be unskilled. There would be postural limitations, so there'd be no crawling or crouching or climbing or squatting or kneeling; and there would be lower extremity limitations, so there'd be no use of the legs or feet pushing or pulling of foot or leg controls; and the job would offer a sit/stand option so that the employee could alternate between sitting and standing and still perform the job functions. Now, are there jobs that would fit that hypothetical that exists in the state and national economy?

(Tr.203-04).

Mr. Kelman responded that such jobs did exist in such circumstances at both sedentary and light levels, including positions in assembly or production, gate-guard work, select cashier positions, fuel island employee and parking lot cashier. (Tr.204). Mr. Kelman's opinion changed when added to the hypothetical were frequent breaks and high absenteeism to the point that the person would not be able to work. (Tr.205). Moreover, Mr. Kelman opined that if the person suffered from severe pain or if the Plaintiff's testimony as to his limitations were accepted, then there would be no work available. (Tr.206).

**C. The ALJ's Conclusion**

In his decision, the ALJ found the Plaintiff not "disabled" within the meaning of the Social Security Act. The ALJ found that the Plaintiff possessed impairments of "low back and bilateral leg pain, chronic obstructive pulmonary disease, a history of cardiac arrythmias, situational depression and situational anxiety," but none were severe enough to meet one of

the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr.16). The ALJ noted the findings of Dr. Rios, and specifically that the Plaintiff should be precluded from activities that require bending and stooping. (Tr.17). However, the ALJ gave little weight to the findings of Dr. Bauder regarding Plaintiff's ability to sit for only four hours, stand or walk for no more than three hours and that Plaintiff was severely limited by pain. (Id.). The ALJ stated in pertinent part:

> neither a limitation to less than an eight-hour workday nor a severe limitation due to pain is supported by the medical evidence, which shows only mild degenerative changes of the lumbar spine with no acute disc herniation and no fracture or kyphosis and further shows that nerve conduction study revealed no radiculopathy. ... In conclusion, the objective medical evidence supports a conclusion that although the claimant would be precluded from performing his past relevant medium work, he would be able to perform light unskilled work with a sit/stand option, as further described below.

(Tr.17-18).

The ALJ further rejected Plaintiff's testimony as to the severity of his impairments noting in pertinent part:

> First, the testimony of the claimant is not fully credible concerning the severity and extent of his limitations. Neither the severity nor the extent is supported by medical evidence of record. Second, his amended alleged onset date is October 8, 2003, and his last earnings are shown on his earnings record as being in 1999. There is no indication that he even attempted to find lighter work than he had done in the past, and unskilled work if he had trouble reading orders in his past work as he alleged in Exhibit 3E. Third, with regard to his activities of daily living, he reported that he took care of his own personal needs. He cooked, shopped, helped with the housecleaning, took short walks, fed the dogs and watched television. He was able to drive a car. (Exhibit 3E). The objective medical evidence fails to support a reason why the claimant would have significant limitations in his ability to perform activities of daily living.

(Tr.18).

The ALJ then concluded that Plaintiff possessed the residual functional capacity to perform light unskilled work with a sit/stand option. (Tr.18). Specifically, according to the ALJ, Plaintiff could lift and/or carry ten pounds frequently and twenty pounds occasionally and was unable to crawl, crouch, climb, squat or kneel and was unable to use his lower extremities for pushing or pulling. (Id.). Based upon this residual functional capacity and the testimony of the vocational expert, although Plaintiff could not perform his past work,

the ALJ concluded that Plaintiff could perform jobs existing in the state and national economy and was, therefore, not "disabled." (Tr.21).

**III. Standard of Review**

This Court must affirm the ALJ's findings if they are supported by substantial evidence and free from reversible legal error. Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

In determining whether substantial evidence supports a decision, the Court considers the record as a whole. Richardson, 402 U.S. at 401; Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990). Where evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). Therefore, if on the whole record before the Court, substantial evidence supports the Commissioner's decisions, this Court must affirm. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C. § 405(g).

An ALJ determines an applicant's eligibility for disability benefits through the following five stages:

(1) determine whether the applicant is engaged in "substantial gainful activity;"

(2) determine whether the applicant has a "medically severe impairment or combination of impairments;"

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work

> in the national economy in view of his [or her] age, education, and work experience."

Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)). See 20 C.F.R. § 416.920. At the fifth stage, the burden of proof shifts to the Commissioner. Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

## IV. Discussion

Plaintiff argues reversible error as to the following three areas of the ALJ's findings: (1) the ALJ improperly rejected the opinion of Plaintiff's treating physician, Dr. Bauder; (2) the ALJ improperly rejected the credibility of the Plaintiff; and (3) the ALJ improperly set Plaintiff's residual functional capacity without citing its source.

### A. ALJ's Rejection of Dr. Bauder's Findings Regarding Work Limitation and Pain

With respect to ground one of Plaintiff's argument, Plaintiff contends that the ALJ erred in rejecting certain limitations found by Dr. Bauder as to Plaintiff's residual functional capacity assessment and existence of "severe" pain. (Tr.147-49). Plaintiff further contends that Dr. Bauder's findings are "somewhat substantiated" by the statement by Dr. Birds on February 13, 2004, that Plaintiff possessed a "poor prognosis for improvement" and was "guarded for significant recovery without intensive psychotherapy and social support." (Tr. 109). In opposition to Plaintiff's argument on these points, the Commission contends that the ALJ's findings are supported by substantial evidence. For instance, the Commissioner correctly notes that even though Dr. Bauder, a treating physician, found Plaintiff to have significant residual functional limitations such as the ability to only sit for four hours, and be on his feet for only three hours of an eight hour work day (Tr.147) as well as "severe" pain, the ALJ was not obligated to accept such findings as long as there were specific and legitimate reasons for doing so, based on substantial evidence in the record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). The Commissioner argues that no other physician found such drastic limitations and relies on other medical evaluations of Plaintiff. For instance, the Commissioner notes that Dr. Nicol, on March 24, 2005 found Plaintiff to lack any acute disc herniation and that surgery or steroid injections were not appropriate. (Tr.

152). In addition, the Commissioner notes that Dr. Hellman's findings revealed no radiculopathy and that Plaintiff had rejected steroid injections. (Tr.161,194). Moreover, Dr. Rios, in December of 2003, found Plaintiff's chest complaints to be isolated and benign and Plaintiff's back pain to be "mechanical in nature." (Tr.107, 107A).

In reviewing the record, the Court is in agreement with the Commissioner that the ALJ's decision rejecting Dr. Bauder's stated limitations is supported by substantial evidence. Contrary to Plaintiff's argument, the ALJ provided the requisite specific and legitimate reasons regarding the ALJ's rejection of Dr. Bauder's findings as to Plaintiff's residual functional limitations and pain. Thomas 278 F.3d at 957. For instance, the ALJ addressed at length the evidence supporting a contrary conclusion to that of Dr. Bauder. The ALJ noted that Dr. Nicol's evaluation of Plaintiff on March 24, 2005, with the benefit of a recent MRI exam, indicated only mild degenerative changes in the lumbar spine with no acute disk herniation. (Tr.17, 152). Notably, Dr. Nicol concluded that Plaintiff was not in need of surgical intervention or steroid injections. (Tr.152). In addition, the ALJ cited the findings of Dr. Heeland's examination on May 3, 2005, which indicated no radiculopathy. (Tr.17,161). Moreover, Dr. Rios' examination on December 1, 2003, suggested Plaintiff's back pain to be "mechanical in nature" with no finding of nerve root irritation or accompanying spasm. (Tr.17, 107A). These findings are all clearly contrary to Dr. Bauder's findings with respect to significant limitations as to Plaintiff's ability to work an eight hour day and accompanying "severe" pain. The Court is conscience of the fact that treating physicians, such as Dr. Bauder, are entitled to receive greater deference than those of examining physicians, but such deference does not preclude the rejection of a treating physician's findings where there are specific and legitimate reasons in the record to rebut it. In this case, the ALJ has met his burden in rejecting the stated limitations found by Dr. Bauder as the ALJ supplied the requisite specific and legitimate reasons supported by substantial evidence in the record. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("[w]here medical testimony is conflicting ... it is the ALJ's role to determine credibility and to resolve the conflict.").

**B. ALJ's Rejection of Certain Aspects of Plaintiff's Credibility**

Plaintiff also contends that the ALJ improperly discounted Plaintiff's credibility as to the severity of his symptoms including his pain testimony. In opposition, the Commissioner contends that the ALJ properly discounted Plaintiff's credibility and that the ALJ provided specific "clear and convincing" reasons justifying this decision.

"[O]nce the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (citing Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir.1986)). "Unless, there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing'" Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citing Lester 81 F.3d at 834. "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834.

In the instant case, there is no dispute that Plaintiff suffered from underlying objective impairments, including low back and bilateral leg pain and cardiac arrythmias. (Tr.16). In addition, there does not appear to be any evidence of malingering, nor does the Commissioner advance such an argument, therefore the issue is whether the ALJ provided the requisite "clear and convincing" reasons rejecting Plaintiff's credibility. As noted above, the ALJ articulated three main reasons rejecting Plaintiff's credibility. First, the ALJ concluded that the medical evidence simply did not support Plaintiff's limitations. Second, the ALJ discounted Plaintiff's credibility due to the amending of his onset date from May 31, 2002, to October 8, 2003, the lack of any earnings statement from Plaintiff since 1999, and the omission of any evidence suggesting Plaintiff had tried to locate other work. Third, the ALJ noted that Plaintiff's daily activities were not indicative of disabled status. For instance, the ALJ noted Plaintiff cooked, shopped, assisted with housecleaning, took walks and was able to drive a car. (Tr.18).

The Court finds that the ALJ's explanation discounting Plaintiff's credibility regarding his alleged limitations suffices to meet the ALJ's obligation. As noted by the Commissioner, the ALJ is permitted discretion in citing relevant factors discounting a Plaintiff's credibility. See Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (noting relevant factors to include the nature, duration, location, onset, intensity of pain; functional restrictions and claimant's daily activities.); see also SSR 96-7p. In articulating the relevant factors discussed above, the ALJ has provided the requisite "clear and convincing" reasons discounting Plaintiff's credibility. See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (stating that "credibility determinations are the province of the ALJ."). The ALJ's decision provides a thorough analysis of the medical record regarding the nature and severity of Plaintiff's limitations and pain. In addition, the ALJ has reasonably doubted Plaintiff's credibility based upon a potential lack of motivation and Plaintiff's daily activities. While, reasonable minds may differ as to the ALJ's determination, the Court's inquiry is limited to determining whether the requisite "clear and convincing" reasons have been supplied. The Court finds that the ALJ has complied with this obligation.

**C. ALJ's Determination of Plaintiff's Ability to Perform "Light" Work**

Lastly, Plaintiff contends that the ALJ improperly imposed his own finding that Plaintiff could perform "light" work with a sit/stand option as opposed to "sedentary" work. In support of this position, Plaintiff again cites the limitations found by Dr. Bauder as to Plaintiff's ability to perform work related activities. (Tr. 147-49). However, the Court finds that the ALJ did not error in finding Plaintiff to possess the residual functional capacity to perform "light" unskilled work with a sit/stand option. (Tr.18). As noted by the Commissioner, it was the obligation of the ALJ to formulate such an assessment in this case. See 20 CFR § 416.946(c). Although Dr. Bauder provides the only specific work related assessment of Plaintiff in the record, as explained above the ALJ has provided the requisite specific and legitimate reasons supported by substantial evidence in the record in rejecting such findings, such as contrary medical records from several examining physicians. (Tr.17). Moreover, the ALJ has provided the requisite "clear and convincing" reasons rejecting

Plaintiff's testimony regarding certain limitations as to his ability to work. (Tr.18). Although Plaintiff disagrees with the ALJ's residual functional capacity assessment of Plaintiff, the Court's inquiry is limited only to whether the ALJ's assessment is well supported by substantial evidence in the record. The Court finds that the ALJ's determination is supported by the requisite substantial evidence. (Tr.107, 107A, 152, 159).

**V. <u>Summary</u>**

The Court finds that the ALJ properly discounted the stated limitations offered by Dr. Bauder as well as Plaintiff's credibility as to the severity of his symptoms. In addition, the ALJ's residual functional capacity assessment is supported by substantial evidence in the record.

**Accordingly,**

**IT IS HEREBY ORDERED** denying Plaintiff's Motion for summary judgment. (Dkt.#13).

**IT IS FURTHER ORDERED** granting Defendant's Motion for summary judgment. (Dkt.#17).

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly.

DATED this 27th day of March, 2007.

Mary H. Murguia
United States District Judge